Opinion of the Court, by
Judge Wallace.
THIS was a suit in chancery in the court below, in which Peter January and Thomas January, as merchants and co-partners, were complainants, and Elisha Winters and John Smith defendants; and by that court a decree was entered up for the complainants against Winters for £1,107 19s. 11 3-4, as the balance of an account due from him to them, and the bill dismissed as to Smith without decreeing him his costs; but Smith not being a party to the appeal, the interference of this court is not demanded by him; so that it is only necessary to examine the propriety of the decree as to Winters.
From this decree it appears that, in one instance, a material fact is ascertained against Winters, and in another instance, the effect which his answer might otherwise have had is destroyed by the answer of Smith, without its being alleged or proved that they were either legally or fraudulently combined, so as to create an unity of interests between them: And it is an established rule in chancery, that in no other case the answer of a defendant can be taken as evidence against a co-defendant. Not to say, that it appears that Smith was a co-partner with the complainants in the principal matters in litigation, and consequently in that point of view, he was so far disqualified from being a witness in the cause against Winters, even if his deposition had been regularly taken. As far therefore as the decree in question is founded on Smith’s answer, it must be erroneous. It cannot be urged, with propriety, that this suit was brought to obtain from the defendants a discovery of transactions which rested solely in their knowledge; and therefore, that without the aid of Smith’s answer,the complainants could not obtain a remedy against the fraud of Winters. For if it be so, their case is nothing different from all others both in law and equity where there is a defect of evidence. And true it is, that the generality of suits in chancery are brought to obtain discoveries from the defendants; in all of which the decisions against each of the defendants, if obtained, must be founded on their respective confessions or admissions, or those of their partners, or on other legal evi *14 dence; and it is believed that no exception to this rule has ever been, or can with safety, be admitted. So that whatever may be the hardship to the complainants, their cause must be decided conformably to the principles which have been matured by the wisdom and experience of ages.
But it seems to this court that the decree under consideration is erroneous in several other respects, yet to be pointed out.
Two of the principal sources of contest between the parties, are concerning an adventure of hemp and of tobacco, which the appellees sent to New-Orleans in the spring of the year 1791; and it appears from the bill and exhibits in the cause, or it may be certainly inferred from them, that although those commodities were the property and at the risk of the appellees, yet they were to be transported to New-Orleans in the name and as the property of the appellant, who was a Spanish subject, that thereby they might be screened from the impost duties to which they would otherwise have been subjected, and have a probable chance to be sold for higher prices; and the better to accomplish those purposes, they were not only consigned to the appellant at New-Orleans; but the presumption is strong that the appellant was expected by the appellees to sail, and did sail, down the river with some of the commodities on board his own vessel, and in company with three vessels belonging to the appellees, which carried the rest of them. It also appears that the appellant was furnished with an invoice of the commodities, and that he gave the appellees a receipt for it, before his departure from this country; but until the delivery of the commodities to him as consignee at New-Orleans, they were to be, (as is customary in such cases,) under the care of the captains who commanded those vessels; two of whom were co-partners with the appellees in the commodities, and one of them their special agent, to superintend their transportation to, and their sales at New-Orleans; and if the tobacco in particular could not be sold there agreeably to his instruction, to ship it to Philadelphia; and moreover, that if he, as agent for the appellees, should have any produce or cash to ship to the last mentioned place, they were to be in the name and as the property of the appellant, thereby to screen it from the export duty to which they would *15 otherwise have been subjected at New-Orleans. And it ought to be observed, that no voucher or other proof is exhibited to shew that the hemp or tobacco was ever delivered to the appellant as the consignee of the appellees; and from the evident intention of the parties, it is probable they were not. It was only necessary that they should be reputed his property, and for him to have sold them agreeably to his contract with the appellees, if he could have done so, and directed their agent or captains, as his ostensible agents, to deliver them to the purchasers. It ought also to be observed, that the appellant asserts in his answer that he had performed his part of the articles of agreement or contract between him and the appellees, and there has been no proof exhibited to the contrary; so that he cannot be accountable for those commodities further than it is proved that they came into his hands as a purchaser or as an agent, and as they might have been received by any other person who was not a consignee.
In a suit in chancery brought against a consignee, if in his answer he states that he sold the articles at a specified price, “according to the instructions of the complainants, which he files with his answer,” but in fact files no such instructions, his answer will be evidence merely that he sold at such a price, but not that he was instructed to do so; and he will be answerable for the average price of such articles, at the market at which he sold, at the time of sale.
*15 The only proof of this kind which appears concerning the hemp, Smith’s answer being excluded, is the statement in the appellant’s answer, that he received the hemp mentioned in the invoice, and that he purchased it of John Smith, the agent for the appellees, for which he, the appellant, settled with him some time after it was free from the contract with the appellees. As the whole of this statement, considered as a confession, must be taken as it is given, and as Smith, after the hemp was free from that contract, was authorised both as the agent and co-partner of the appellees to sell it, and to receive payment for it, and as neither fraud, collusion nor mistake in the sale or settlement is proved, it seems to this court that no investigation as to the quantity, price or payment ought to have been made by the court below; more especially as several circumstances which appear in the cause, render it highly probable that such a sale and settlement was made by Smith.
As to the 3,990 weight of hemp which is charged more than was specified in the invoice, it is sufficient to observe that there is no proof that it came into the hands of the appellant; and therefore he ought not to have been decreed to pay for it.
Neither is there any proof that the appellant received any of the tobacco, except his own receipt, *16 which is as follows: “New-Orleans, 31st May 1791. Received from Mr. John Smith 27,968 pounds of tobacco, which is to be sold and the net produce paid to Thomas January or order, or shipped, consigning it to Mr. John Purdon of Philadelphia, at the risk and charge of the said Tho’s. January. (Signed,) Elisha Winters.” The giving of this receipt and that it was for part of the adventure of tobacco, is confessed by the appellant in his answer; and it ought to be presumed that the quantity was ascertained agreeably to the weights of the country where the receipt was given; and in answer to one of the appellees’ interrogatories, he states that he sold it at New-Orleans for three dollars the hundred weight; adding that it was to be sold by him according to the directions or instructions of the agent for the appellees; but has omitted to file them, notwithstanding he twice prays that they may be taken as part of his answer. Those instructions not having been exhibited, it ought to be presumed that they were not observed as to the price; and therefore, that part of his answer which relates to it should be disregarded, although it might have otherwise been legal evidence against the appellees; more especially as he has not revealed to whom he sold it, and thereby given the appellees an opportunity of investigating the truth of this statement; and the assertion in his answer “ that he never promised to ship the said tobacco,” is contradicted by his receipt, which has been recited. The price which the appellant received for the tobacco being thus rendered uncertain, this court thinks it equitable that he should pay the appellees the average market price at New-Orleans, at or about the time he received it, which appears to have been three dollars and a half the hundred weight, first deducting from the amount of the price a reasonable commission for selling it; but that no allowance should be made him for storage, there not being a voucher to prove that any was paid by him; and also, that he should pay interest on the balance thus ascertained, at the rate of five per centum per annum from the 12th day of December 1792, that being the first time it can be presumed that the appellees demanded payment for the tobacco, or that the appellant had an opportunity of tendering it to them.
Another important source of contest between the parties is a writing purporting to be a receipt from John *17 Smith to the appellant for 950 dollars on account of the appellees, and which was rejected by the court below because it was not witnessed, and because the court presumed that the money was paid for a brig, in which it adjudged the appellees were not interested.
A receipt exhibited with an answer in chancery, as part of it, ought to be received without further proof, unless there is some evidence of forgery or fraud.
But it seems to this court, as Smith was certainly empowered to give such a receipt, and as receipts are not required by law to be attested, that this receipt having been referred to by the appellant and made part of his answer, could not have been invalidated but by some mode of procedure which would have put the signature of Smith in issue, or by proof that it was fraudulently or erroneously obtained, neither of which has been done. There is indeed an exhibit containing a statement of an account between the parties, in which the appellant is credited for £285 paid for the brig Zeal, which is equal to 9.50 dollars; but as this account is not signed by the appellant, nor referred to in his answer, or even stated in a style from which it can be presumed to have been filed by him, it ought not to be taken as evidence against him; and if it were, it could only authorise a presumption, when considered in connexion with the receipt and other exhibits, that he had paid so much of the price of the brig at the request of Smith as the agent or partner of the appellees. And whether Smith was or was not authorised to purchase the brig on account of the appellees, were inquiries which could not concern the appellant. Therefore, on this point, it need only be further observed, that it being clearly implied in the appellant’s answer, that he took the receipt for so much paid by him for the hemp, he does not, nor cannot claim a credit for it any other way; and this court has before delivered its opinion that any further investigation concerning the hemp would be improper.
As to the hemp-seed, it seems to this court that sufficient reasons have been recited to account for the appellant’s acting as its owner, or as spokesman for Smith, when it was left at Natchez, which was at that time a Spanish post; and as there is no proof that it was committed to his charge, he should only have been decreed to pay the appellees so much of its proceeds as came into his hands, which, it appears, was £5 17s. and interest thereon as before mentioned from the 12th day of December 1792, that being the first time it appears the *18 appellant had an opportunity of paying it to the appellees.
It seems to this court, that the court below has likewise erred in decreeing that the appellant should pay to the appellees the whole amount of the private account exhibited in their bill. They state that on the 20th day of March 1791, the appellant settled with them and gave them his note for the balance then due to them, which note they do not even allege they have lost; certainly, therefore, if it has not been cancelled, it should speak for itself, or their agent to whom they state it was committed, should account with them for it; and the appellant should only have been decreed to pay them so much of the account as originated subsequent to the 20th day of March 1791, and as was satisfactorily proved to be just, and interest thereon as before mentioned from the date of the last item thereof; any mistakes or omissions which appeared to have been made in the settlement, having first been rectified.
This court thinks that the 420 dollars which were paid July 29th 1795 to Thomas January by the appellant, should be applied to the credit of his note to the appellees for £118 9s. 10d. dated May 31st 1791, and the interest due thereon as before mentioned to the time this payment was made, if it has not already been so credited, and that the balance of the note and interest should stand as a debit against the appellant.
This court also thinks, that agreeably to the decree the appellant should have credits for £ 18 15s. paid July 20th 1792, to Peter January, Jun. for the appellees, and for £7 8s. 6d. the price of 49 1-2 bushels of rye paid to the appellees, September 1st, 1792, by F. Downing for the appellant, and interest thereon as before mentioned from the respective dates of their payment; and that the court below was right in not allowing him a credit for the note for £41 12s. 6d. given to him by John Smith; because it does not appear from its style, or any other proof, that the appellees are justly chargeable with it. Indeed, the style of the receipt for 950 dollars, which appears to have been given the same day, being different, and the note not being charged in the appellant’s answer, are presumptive proofs to the contrary; besides, it is highly improbable that Smith, on behalf of the appellees, would the same day give a note to the appellant and receive another from him.
*19 After the decisions which have been given by this court, as to the hemp, tobacco and hemp-seed, it is scarcely necessary to intimate, that the first cost of them and all the expences incurred by the appellees concerning them, together with the profits to which they were supposed to be entitled, ought to have been struck out of the account on which the decree of the court below was founded.
Whereupon it is decreed and ordered, that so much of the said decree of the said district court, as is contrary to, or inconsistent with the foregoing opinion of this court, be reversed, together with its decree for costs to the appellees; and that the appellees do pay unto the appellant his costs about this appeal expended.